UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:  ROBERTO G. DORADO, a/k/a                                    No. 7-07-13164 MR
        ROBERTO DORADO-GUEVARA,

        Debtor.
_____

GREGORIO HERNANDEZ and
MARIA HERNANDEZ,

        Plaintiffs,

v.                                                                  Adversary No. 08-1009 M

ROBERTO G. DORADO a/k/a
ROBERTO DORADO-GUEVARA,

        Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court following a trial on the merits to determine the dischargeability of a debt arising from the parties' oral contract to remodel Plaintiffs' home. Plaintiffs assert that the debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4) and/or (a)(6).[1]  A Spanish-English interpreter served at trial because neither Plaintiffs nor Defendant

---

[1] The Complaint to Determine Dischargeability of Debt asserts causes of action under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6), but the Amended Pre-Trial Order references only 11 U.S.C. § 523(a)(4) and (a)(6).  *See* Docket Nos. 1 and 14.  The pre-trial order controls the matters for trial.  *See* Rule 16(d), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7016, Fed.R.Bankr.P.  Because the Amended Pre-Trial Order includes a contested issue of law that the Defendant obtained monies by false pretenses, false representations, or actual fraud, the Court will consider Plaintiffs' claim under 11 U.S.C. § 523(a)(2)(A) even though the Amended Pre-Trial Order fails to specifically reference that subsection of 11 U.S.C. § 523.  *See In re Miner,* 369 B.R. 655, 672 (Bankr.D.Kan. 2007)("'[T]he Pretrial Order should be 'liberally construed to cover any of the legal or factual theories that might be embraced by their language.''")(quoting *Lohmann & Rauscher, Inc. v. YKK (U.S.A.) Inc.*, 477 F.Supp.2d 1147, 1151-52 (D.Kan.2007) (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir.1979)).

1

are fluent in English (nor is the Court fluent in Spanish). Whether the debt at issue in this proceeding is non-dischargeable largely depends upon whom the Court believes. Plaintiffs allege that Defendant misrepresented to them that he was a licensed contractor, when in fact he is not. Defendant maintains that he never told Plaintiffs he was a licensed contractor.

After careful consideration of the evidence and testimony, and being otherwise sufficiently informed, the Court finds that neither 11 U.S.C. § 523(a)(4) nor (a)(6) apply, and, although Defendant has not satisfactorily accounted for his receipt of $20,000.00, the evidence is insufficient to establish that Defendant intended to defraud Plaintiffs. Nor does the Court find that Defendant misrepresented to Plaintiffs that he was a licensed contractor. Consequently, the debt is dischargeable.

## FACTS

Gregorio Hernandez and Maria Hernandez (together, Plaintiffs) and Roberto Dorado (Defendant) came to the United States from the same town in Mexico. Defendant knew the Plaintiffs from when he lived in Mexico, and considered Mr. Hernandez a good friend. Defendant was also friends with Ms. Hernandez's brother in law. In 2006, Plaintiffs decided that they wanted to remodel their home. Ms. Hernandez testified that Defendant offered to do the work, that he told Plaintiffs that he had done similar work in California, and that he had a license to do it. Defendant testified that he never represented to Plaintiffs that he had a contractor's license.

Plaintiffs and Defendant entered into an oral agreement for Defendant to remodel Plaintiffs' home, including adding a fifty-foot by twelve-foot room to the existing home. There

is no written contract for the project. Defendant believes Plaintiffs agreed to pay $35,000 for the completed project. Plaintiffs believe they agreed to pay a total of $25,000. Plaintiffs advanced Defendant $15,000 on or about August 8, 2006 so that Defendant could purchase materials for the project. *See* Exhibit 24 - Check dated 8/8/06 for $15,000. About one week later, Plaintiffs advanced Defendant an additional $5,000. *See* Exhibit 25 - Check dated 8/12/06 for $5,000.

Defendant, along with his father and two others, began the work on the inside of the home in August of 2006. Defendant testified that he paid his workers between $500 and $600 per week. He paid them in cash, and does not have time sheets or other records for these labor expenses. Defendant documented expenses for materials in the total amount of $4,586.76. *See* Exhibit B - Receipts from McCoy's; Exhibit C - Receipts from Home Depot; Exhibit D - Receipts from Higginbotham-Bartlett. Defendant testified that he did not keep all receipts for the materials he purchased for the remodeling project.

Work on the addition to the home could not begin until a construction permit was obtained. Mr. Hernandez signed the application for a Homeowner Construction Permit. *See* Exhibit 2. Plaintiffs did not have the skills or ability to do the work themselves and had no experience in construction. Defendant testified that he and Mr. Hernandez agreed that if a building inspector came to inquire about the project, Defendants were to tell the inspector that they were doing the work themselves, and that Defendant was only helping them. The permit was not issued until November of 2006. *See* Exhibit 2 - State Building Permit reflecting November 4, 2006 as the date issued; *But see* Exhibit 3 - Notice of Building Permit No. 2006050096, reflecting permit issue date of 10/3/2006.

Defendant did not complete the remodeling project. By the time the permit for the

3

addition was issued, Defendant had already left the job. Plaintiffs testified that Defendant left the inside of their home torn apart. In support of this testimony, Plaintiffs offered photographs of the incomplete work. Defendant denied that he left the home in the condition depicted in the photographs, but does not dispute that he did not complete the job nor that he did not start any work on the addition. Defendant did not return to the Plaintiffs any of the $20,000 he received from the Plaintiffs. Plaintiffs ultimately paid different contractors to complete the remodeling project, including the addition.

## DISCUSSION

Plaintiffs claim that the $20,000 they gave to Defendant for the remodel of their home should be declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6). Exceptions to discharge under 11 U.S.C. § 523(a) must be construed narrowly.[2] Furthermore, "because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor."[3] Plaintiffs bear the burden of proving that the debt at issue is non-dischargeable by a preponderance of the evidence.[4] As explained below, the Court will resolve this matter in favor of the Defendant and find that the debt at issue is dischargeable.

  A. Fiduciary capacity, embezzlement, larceny - 11 U.S.C. § 523(a)(4)

Section 523(a)(4) provides, in relevant part:

A discharge under section 727 . . . of this title does not discharge an individual debtor

---

[2] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1991).

[3] *Id.* (citing *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir. 1986)).

[4] *Grogan v. Gardner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(holding that preponderance of the evidence standard applies to all exceptions from dischargeability of particular debts under 11 U.S.C. § 523).

4

from any debt–
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

To prevail under this section, Plaintiffs must show that there was a fiduciary relationship between the parties that gave rise to an express[5] or technical trust[6] and that Defendant committed fraud or defalcation during the course of that fiduciary relationship.[7] Plaintiffs have neither alleged nor proven the existence of an express or technical trust. Consequently, Plaintiffs have not demonstrated that Defendant was acting in a fiduciary capacity. Absent a finding of a fiduciary relationship, Plaintiff's claim for non-dischargeability based on a defalcation while acting in a fiduciary capacity fails.[8]

Debts may also be declared non-dischargeable under 11 U.S.C. § 523(a)(4) in the

---

[5] An express trust requires an intent to create a trust, a clearly defined trust *res*, and specific trust duties. *See, Tulsa Spine Hospital, LLC v. Tucker (In re Tucker),* 346 B.R. 844, 850 (Bankr.E.D.Okla. 2006)("'The elements of an express trust are the intent to create a trust, a clearly defined trust res, and specific trust duties.'")(quoting *In re Stefanoff,* 97 B.R. 607 (Bankr.N.D.Okla. 1989)).

[6] A technical trust is a trust imposed by statute. *In re Neal,* 324 B.R. 365, 370 (Bankr.W.D.Okla. 2005), *aff'd,* 342 B.R. 384 (10th Cir. 2006). *See also Cundy v. Woods (In re Woods),* 284 B.R. 282, 288 (D.Colo. 2001) ("A technical trust may arise as a result of defined obligations imposed upon the debtor by state or federal statute.")(citing *In re Romero,* 535 F.2d 618, 622 (10th Cir. 1976)).

[7] *Neal,* 324 B.R. at 370 (stating that "a finding of nondischargeability under § 523(a)(4) requires a showing of (1) the existence of a fiduciary relationship between the debtor and the objecting party, and (2) a defalcation committed by the debtor in the course of that fiduciary relationship.)(citing *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996)); *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie),* 216 B.R. 283, 285 (10th Cir. BAP 1997)(same).

[8] *See Neal,* 324 B.R. at 370 ("'The existence of a fiduciary relationship is a threshold issue to be determined under § 523(a)(4)(quoting *Klenda v. Hogue (In re Hogue),* 221 B.R. 786, 793 (Bankr.N.D.Okla. 1998)).

5

absence of a fiduciary relationship when the debts result from a debtor's embezzlement or larceny.[9] Although fiduciary capacity is not a requisite to embezzlement or larceny within the meaning of 11 U.S.C. § 523(a)(4), both embezzlement and larceny include a fraudulent intent component.[10] "Larceny is defined as the 'fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property.'"[11] For purposes of 11 U.S.C. § 523(a)(4), "larceny" "requires that the initial appropriation of the property of another be wrongful."[12] Embezzlement is defined for purposes of 11 U.S.C. § 523(a)(4) as "'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'"[13] The main difference between larceny and embezzlement is that with embezzlement, the debtor

---

[9]*Tucker,* 346 B.R. at 852 (stating that debts may still fall within the exception to discharge of § 523(a)(4) in the absence of a fiduciary relationship when they result from embezzlement or larceny); *In re Lynch,* 315 B.R. 173, 175 (Bankr.D.Dist.Col. 2004)("A claim for nondischargeability under Section 523(a)(4) may rest on proof of larceny or embezzlement, without requiring proof of a fiduciary relationship.")(citing *In re Wallace,* 840 F.2d 762, 765 (10th Cir. 1988)).

[10]*See Bombardier Capital, Inc. v. Tinkler (In re Tinkler),* 311 B.R. 869, 876 (Bankr.D.Colo. 2004)("'Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner.'")(quoting *Kaye v. Rose (In re Rose),* 934 F.2d 901, 902 (7th Cir. 1991)); *In re Tilley,* 286 B.R. 782, 789 (Bankr.D.Colo. 2002)(among the required elements for embezzlement is fraudulent intent); *Sullivan v. Clayton (In re Clayton),* 198 B.R. 878, 885 (Bankr.E.D.Pa. 1996)("Essential to both larceny and embezzlement is the element of fraudulent intent.")(citing *In re Graham,* 194 B.R. 369, 374 (Bankr.E.D.Pa. 1996) and *In re Spector,* 133 B.R. 733, 741 (Bankr.E.D.Pa. 1991)).

[11]*Tilley,* 286 B.R. at 789 (quoting *Pool v. Johnson,* 2002 WL 598447, *2 (N.D.Tex.2002)(quoting *Smith v. Hayden (In re Hayden),* 248 B.R. 519, 526 (Bankr.N.D.Tex. 2000)).

[12]*Clayton,* 198 B.R. at 884.

[13]*Wallace*, 840 F.2d at 765 (quoting *Great Am. Ins. Co. v. Graziano (In re Graziano),* 35 BR 589, 594 (Bankr.E.D.N.Y. 1983)).

6

initially acquires the property lawfully, whereas "'[l]arceny requires that the funds originally come into the Debtor's hands unlawfully.'"[14]

Plaintiffs' claim for non-dischargeability to the extent based on larceny or embezzlement also fails. There is insufficient evidence that Defendant fraudulently took Plaintiffs' property, or that Defendant fraudulently deprived Plaintiffs' of their property after lawfully acquiring it. Defendant obtained the funds in order to do the remodeling work according to the parties' oral agreement. He did not finish the work, but spent all of the money. In other words, he breached their oral contract.

"Generally, when there is no security interest involved, monies received by a debtor belong to the debtor and their subsequent use by a debtor is not considered embezzlement"[15] so that, "[i]n the absence of an identifiable fund of cash belonging to the *creditor*, a court is left with a simple breach of contract which is dischargeable."[16] Here, there was no security agreement, and once Plaintiffs paid the funds to Defendant, the funds no longer belonged to Plaintiffs. Defendant then breached their contract. Consequently the debt does not fall within the non-dischargeability exception contained in 11 U.S.C. § 523(a)(4).

B. Willful and Malicious Injury - 11 U.S.C. § 523(a)(6)

---

[14] *Tinkler*, 311 B.R. at 876 (quoting *Webber v. Giarratano (In re Giarratano),* 299 B.R. 328, 338 (Bankr.D.Del. 2003)). *See also Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke),* 212 B.R. 375, 381 (Bankr.D.Kan. 1997)(stating that "[e]mbezzlement differs from larceny in that the original taking was lawful.")(citation omitted).

[15] *Glenn v. Hrim (In re Hrim),* 196 B.R. 237, 242 (Bankr.N.D.N.Y. 1993)(citing *In re Imbody,* 104 B.R. 830, 841 (Bankr.N.D.Ohio 1989), citing *In re Koelfgen*, 87 B.R. 993, 998 (Bankr.D.Minn.1988), and *In re Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983)).

[16] *Hrim* 196 B.R. at 243 (emphasis added)(citing *In re Prevost*, 123 B.R. 692, 694 (Bankr.D.N.H. 1991) and *In re Riso,* 978 F.2d 1151, 1154 (9th Cir. 1992)).

7

Section 523(a)(6) provides, in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

"Willful" and "malicious" under 11 U.S.C. § 523(a)(6) are two, distinct elements.[17] Thus, non-dischargeability under 11 U.S.C. § 523(a)(6) requires the plaintiff to "establish that the Debtor's conduct was both willful and malicious."[18] Conversion of property of another can serve as grounds for non-dischargeability under 11 U.S.C. § 523(a)(6).[19] But not every conversion constitutes a willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6); intent to injure the creditor must be present.[20]

As discussed above, the evidence before the Court indicates that Defendant breached the parties' oral contract to complete the remodeling project. But, because 11 U.S.C. § 523(a)(6)

---

[17]*In re Gagle,* 230 B.R. 174, 179 (Bankr.D.Utah 1999); *In re Longley,* 235 B.R. 651, 655 (10th Cir. BAP 1999)(stating that "the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements-- that the injury was both 'willful' and 'malicious.'").

[18]*Gagle,* 230 B.R. at 179 (citations omitted).

[19]*See Longley,* 235 B.R. at 657 (noting that "conversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to § 523(a)(6)."); *Bank of Utah v. Auto Outlet, Inc. (In re Auto Outlet, Inc.),* 71 B.R. 674, 676 (Bankr.D.Utah 1987)("Although this section does not specifically mention conversion, 'willful and malicious injury' was intended to include 'willful and malicious conversion.'")(citing 124 Cong.Rec.H.11096 (daily ed. Sept. 28, 1978); S. 17412 (daily ed. Oct. 6, 1978) (statement of Rep. Edwards and Sen. DeConcini)).

[20]*See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393 (1934)(holding that "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances."); *Tinkler,* 311 B.R. at 878 (non-dischargeability under § 523(a)(6) based on debtor's conversion nevertheless requires creditor to show that the conversion was both willful and malicious).

8

requires both willful and malicious injury, "[i]t is clear . . . that a 'knowing breach of contract,' without more, does not create a debt which is nondischargeable due to willful and malicious injury under § 523(a)(6)."[21]  Plaintiffs' request for non-dischargeability under 11 U.S.C. § 523(a)(6), therefore, must be denied.

C. <u>False Pretenses, False Representation, Actual Fraud - 11 U.S.C. § 523(a)(2)(A)</u>

Section 523(a)(2)(A) provides, in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
> (2) for money . . . to the extent obtained by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition.

11 U.S.C. § 523(a)(2)(A).

To prevail under this section, Plaintiffs must prove by a preponderance of the evidence[22] that evidence that 1) the Defendant made a misrepresentation to Plaintiffs; 2) with intent to deceive; 3) upon which Plaintiffs justifiably relied[23]; and 4) which caused Plaintiffs to sustain a loss.[24]  Intent

---

[21]*Tinkler,* 311 B.R. at 878 (citing *Davis v. Aetna Acceptance,* 293 U.S. at 333, 55 S.Ct. At 153 ("The discharge will prevail as against a showing of conversion without aggravated features."). *See also, Dorr & Associates v. Pasek (In re Pasek),* 129 B.R. 247, 252 (Bankr.D.Wyo. 1991), *aff'd,* 983 F.2d 1524 (10th Cir. 1993)(stating that "an intentional breach of contract, without more, is not sufficient to establish a willful and malicious injury for the purposes of § 523(a)(6).")

[22]*Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that the standard of proof for dischargeability actions is by a preponderance of the evidence).

[23]*Field v. Mans,* 516 U.S. 59, 73-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)(establishing justifiable reliance standard).

[24]*Young,* 91 F.3d at 1373.

9

to defraud may be inferred based on the totality of the surrounding facts and circumstances.[25]

Plaintiffs allege that Defendant misrepresented to them that he was a licensed contractor and that he would obtain a permit for the remodeling project as a licensed contractor for the project. In fact, Defendant is not a licensed contractor, and the permit for the project was obtained in the names of the Plaintiffs' individually. Defendant steadfastly maintained that he never represented to Plaintiffs that he was a licensed contractor.

The Court is not convinced, based on the evidence presented at trial, that Defendant made a false representation to Plaintiffs. Plaintiffs and Defendant entered into an oral agreement to remodel Plaintiffs' home. Plaintiffs advanced Defendant the funds to begin work on the project, and Defendant, in fact, started to work on the project. The alleged misrepresentation is that Defendant represented to Plaintiffs that he was a licensed contractor, when, in fact, he was not. Defendant testified that he has never been a licensed contractor in California or any other state and that he never represented to Plaintiffs that he held a contractor's license. Ms. Hernandez testified that Defendant assured her he could do the work and that he was a licensed contractor.

A debtor's credibility and demeanor play a large role in determining fraudulent intent under 11 U.S.C. § 523(a)(2).[26] After weighing the testimony presented at trial, the Court finds that Defendant did not misrepresent to Plaintiffs that he was a licensed contractor. Defendant's testimony was credible. The fact that the construction permit was signed by Mr. Hernandez signed

---

[25]*Groetkin v. Davis (In re Davis),* 246 B.R. 646, 652 (10th Cir. BAP 2000), *aff'd, in part, vacated in part on other grounds by* 35 Fed.Appx. 826 (10th Cir. 2002)(citing *American Sur. & Cas. Co. v. Hutchinson (In re Hutchinson),* 193 B.R. 61, 64 (Bankr.M.D.Fla. 1996)).

[26]*See Chevy Chase Bank FSB v. Kukuk, (In re Kukuk),* 225 B.R. 778, 786 (10th Cir. BAP 1998)("A finding regarding fraudulent intent . . . will be determined on a case-by-case basis, with the particular circumstances of the case and the demeanor and credibility of the witness playing a very large role.").

as homeowner, and not submitted as a contractor's permit is consistent with, and further supports this finding.

It is troubling that Defendant has not offered any evidence, other than his testimony, to explain how he spent the majority of the $20,000 he received from Plaintiffs. He was only able to document approximately $4,500 from receipts he testified were for materials he purchased for the project. He did not keep time records or other documentation to support labor expenses incurred on the project. Neither Plaintiffs nor Defendant could recall exactly how long Defendant worked on the project, though it is undisputed that Defendant did not perform any work on the addition to the house. All of these factors lead the Court to conclude that there is insufficient circumstantial evidence from which the Court can infer that Defendant intended to defraud Plaintiffs when they entered into the oral agreement to remodel Plaintiffs' home. The agreement to remodel Plaintiffs' home was breached, but Plaintiffs have not shown that the agreement was obtained through Defendant's fraud.[27] Based on the foregoing, the Court concludes that the $20,000 at issue was not obtained by false pretenses, a false representation, or actual fraud and is, therefore, dischargeable under 11 U.S.C. § 523(a)(2)(A).

These findings of fact and conclusions of law are entered in accordance with Rule 7052, Fed.R.Bankr.P. The Court will enter a judgment consistent with this Memorandum Opinion.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: December 16, 2008

---

[27] *See Bank One Columbus, N.A. v. Schad (In re Kountry Korner Store),* 221 B.R. 265, 272 (Bankr.N.D.Okla. 1998)(stating that "fraud must be clearly distinguished from the mere failure to perform a promise, which is not fraud but breach of contract.")(citation omitted).

11

COPY TO:

Ramon I. Garcia
Attorney for Plaintiffs
106 N. Washington Ave
Roswell, NM 88203-3062

Glen L Houston
Attorney for Defendant
1304 W Broadway Pl
Hobbs, NM 88240-5508